**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**FRATERFOOD SERVICE, INC.,**

 **Appellant,**

  **v.**          **Civil No. 15-02009 (ADC)**

**DDR DEL SOL LLC, S.E.,**

 **Appellee.**

## OPINION AND ORDER

Presently before the Court is Fraterfood Service, Inc.'s ("appellant") appeal (**ECF No. 1**) from a District of Puerto Rico Bankruptcy Court order granting DDR Del Sol's ("appellee") motion to dismiss the complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) (**ECF No. 1-2** at 8). The Bankruptcy Court also sanctioned appellant's counsel pursuant to Fed. R. Bankr. P. 9011 for filing a complaint that was not supported by existing law and for improper purposes. **ECF No. 1-2** at 8. After considering the record on appeal and applicable law, for the reasons set forth below, we affirm in part and reverse in part the Bankruptcy Court's ruling.

**I.** **Factual and Procedural History**

On January 2, 2014, appellant filed a voluntary petition for Chapter 11 reorganization and continued to operate, as debtor-in-possession, two restaurants located on property it had leased from appellee. **ECF No. 4** at 5. Pursuant to the *Standard Ground Lease* executed between the parties ("lease agreement") (**ECF No. 4** at 38-126), appellant was authorized to construct a building on the leased premises (**ECF 4-1** at 38-39) at his own expense (**ECF No. 4-1** at 92). Accordingly, appellant constructed a building of approximately 7,500 square feet

Civil No. 15-02009  (ADC)                                                                 Page 2

with the necessary equipment to operate the two restaurants, which included a kitchen exhaust system and power generator.  **ECF No. 4-1** at 352.

On March 25, 2014, appellant requested the Bankruptcy Court's approval to reject the lease agreement pursuant to 11 U.S.C. § 365(a).  **ECF No. 1** at 2.  Appellee acquiesced to the rejection of the lease agreement, and the Bankruptcy Court subsequently granted the rejection, thus terminating the lease agreement.  *Id*. at 2.  On April 10, 2014, appellee requested that the Bankruptcy Court order appellant to satisfy its obligations under the lease that had accrued from the bankruptcy filing until the lease was rejected, estimated at $78,537.23 ("Post Petition Pre-Rejection Rent Claim" or "PPPR").  **ECF 1-2** at 2; **ECF No. 4** at 6.  *See* 11 U.S.C. § 365(d)(3). On October 15, 2014, the Bankruptcy Court granted the PPPR in the amount of $76,886.86. **ECF No. 1-2** at 2.  Appellant did not appeal the order, thereby making the allowance of the PPPR final.  **ECF No. 1-2** at 2; **ECF No. 4** at 6.  On December 8, 2015, appellee filed a motion requesting the prompt payment of the PPPR.  **ECF No. 1-2** at 3; **ECF No. 4** at 6. Appellant then requested an extension of time to oppose appellee's motion, which the Bankruptcy Court granted. **ECF No. 1-2** at 3.

On January 20, 2015, before opposing appellee's motion, appellant filed a complaint against appellee, thus initiating an adversary proceeding within the bankruptcy proceeding. **ECF No. 1-2** at 3. The complaint alleged that appellee violated 11 U.S.C. § 362(a) by illegally withholding property of the bankruptcy estate under 11 U.S.C. § 542, consisting of the building,[1] the kitchen exhaust system and the power generator ("disputed property"), all of

---

[1] The building's alleged cost of construction was  $1,502,877.00.  **ECF No. 4-1** at 352.

Civil No. 15-02009  (ADC)                                                    Page 3

which appellant constructed and installed.  **ECF No. 1-2** at 3; **ECF 4-1** at 10.  Appellant stated

that it constructed the disputed property with appellee's consent under the lease agreement.

**ECF No. 4-1** at 5.  Pursuant to Section 12.8 of the lease agreement, appellant argued that it

could remove the kitchen exhaust system and power generator from the leased premises at

the lease's termination because they were movable trade fixtures and equipment unattached

to the building (**ECF No. 4-1** at 6).

Morever, appellant argued that the building was property of its estate subject to

turnover under 11 U.S.C. § 542 because appellee claimed ownership over the building by its

right to accession pursuant to Puerto Rico Civil Code Article 287 (P.R. Stat. Ann. tit. 31 § 1161).

**ECF No. 4-1** at 6.  Accordingly, appellant claimed that appellee must compensate it pursuant

to Article 297 of the Civil Code of Puerto Rico ("Art. 297") (P.R. Stat. Ann. tit. 31, § 1164).  **ECF**

**No. 4-1** at 6.  Consequently, appellant prayed that the Bankruptcy Court find appellee in

contempt for withholding the aforementioned estate's property and disallow the PPPR under

11 U.S.C § 502(d).  **ECF No. 4-1** at 6.  Finally, appellant requested that the Bankruptcy Court

order appellee to: (1) reimburse the building's construction costs under Art. 297, (2) turnover

the kitchen exhaust system and power generator; and (3) satisfy costs and attorney's fees.

**ECF No. 4-1** at 13-14.

On February 26, 2015, appellee filed a motion to dismiss the complaint for failing to

establish an estate interest in the building, kitchen exhaust system and power generator, or

a right to remedies under Art. 297 or 11 U.S.C. § 502(d).  **ECF No. 4-2** at 156.  Appellee

admitted that the lease agreement authorized appellant to construct a building in the leased

Civil No. 15-02009 (ADC)                                                          Page 4

property and make certain improvements, and that it could remove moveable and unattached trade fixtures upon termination of the lease agreement. *Id.* Nonetheless, appellee argued that the terms of the lease agreement specified that the building, the power generator and the kitchen exhaust system would automatically attach and become property of appellee upon their installation. *Id*. at 156-59. Therefore, appellee argued that appellant had no right to compensation nor could it remove the disputed property because the moment it was installed or constructed it automatically attached to the property and became property of the appellee pursuant to the terms of the lease. *Id*. at 159.

In addition to its argument based on the terms of the lease agreement, appellee argued that Art. 297 is inapplicable in instances where there is a pre-existing lessor-lessee relationship between the landowner and the builder, and therefore appellant has no right to compensation under Art. 297. **ECF No. 4-1** at 165. Consequently, appellee argued that the bankruptcy estate does not have any interest in the leased premises and it did not illegally withhold property pursuant to 11 U.S.C. § 502(d). **ECF No. 4-1** at 164-65.

Finally, since appellant actively litigated the PPPR adjudication, which subsequently became final, appellee alleged that the instant complaint was filed for the improper purpose of impeding the collection of the PPPR. **ECF No. 4-1** at 170. Therefore, appellee requested that the Bankruptcy Court sanction appellant and its counsel and award actual expenses and attorneys' fees, plus a monetary penalty, for infringing Fed. R. Bankr. P. 9011(b). **ECF No. 4-1** at 170.

Civil No. 15-02009 (ADC)                                                                     Page 5

On July 16, 2015, the Bankruptcy Court entered an Opinion and Order dismissing the complaint for failure to establish an estate interest over the disputed property or a right to remedies under Art. 297. **ECF No. 1-2**. The Bankruptcy Court found that the lease agreement specified that the improvements, including the building, the power generator and kitchen exhaust system – automatically attached to the leased property and became part of the leased premises, and in turn, became property of appellee. *Id*. at 7. Although the Bankruptcy Court concluded that the clear terms of the lease agreement were sufficient to establish that appellant had no property right over the disputed property, the Bankruptcy Court further concluded that Art. 297 is inapplicable when there is a previous lessor-lessee relationship between the owner and the builder. *Id.* at 6.

Instead, the Bankruptcy Court concluded that – had the lease agreement not been controlling regarding the dispute – appellee would have the same rights a usufructuary[2] would have over the useful and voluntary improvements it had made. *Id.* Therefore, pursuant to Articles 1463 and 416 of the Civil Code of Puerto Rico (P.R. Stat. Ann. tit. 31 § 4070 and § 1527), which govern the rights of an usufructuary over improvements, appellant would have the right to remove the disputed property if it could do so without damaging the property. *Id.* at 6-7. Nonetheless, the Bankruptcy Court concluded that appellant could not

---

[2] In roman and civil law, an 'usufructuary' is a person with "the right to a usufruct; specif., a person who has the right to the benefits of another's property; a life-renter. Black's Law Dictionary (10th ed. 2014)". Article 396 of the Puerto Rico Civil Code defines 'usufruct' as "the right to enjoy a thing owned by another person and to receive all the products, utilities and advantages produced thereby, under the obligation of preserving its form and substance, unless the deed constituting such usufruct or the law otherwise decree." P.R. Stat. Ann. tit. 31 § 4070. *See* P.R. Stat. Ann. tit. 31 §§ 1501-1580.

Civil No. 15-02009 (ADC)                                                    Page 6

reasonably remove the building, the power generator or the kitchen exhaust system without damaging the property. **ECF No. 1-2** at 7. Therefore, the Court concluded that the instant complaint was not supported by existing law because the clear terms of the lease agreement granted appellee ownership of the disputed property and Art. 297 did not entitle appellant to compensation. *Id*. at 7.

Furthermore, the Bankruptcy Court found that the complaint was filed for the improper purpose of forestalling appellant's collection of the PPPR. *Id*. at 10. Therefore, pursuant to Fed. R. Bankr. P. 9011 and its inherent power, the Bankruptcy Court granted in part, and denied in part, appellee's motion for sanctions and ordered appellant's counsel to pay appellee's legal costs, expenses and fees associated with defending the instant complaint. **ECF No. 1-2 at 10.**

On July 24, 2015, appellant filed a notice of appeal. **ECF No. 1**. In its subsequent brief on appeal (**ECF No. 4**), appellant prays that this Court reverse the Bankruptcy Court's Opinion and Order dismissing the complaint because it was premised on an erroneous interpretation of the lease agreement and Art. 297. *Id*. at 23. First, appellant argues that Section 12.8 of the agreement entitles it to remove the power generator and kitchen exhaust system from the building (**ECF No. 4-1** at 23) because it can remove said items without damaging the building (*Id*. at 9). Second, appellant asserts an additional argument that it did not raise before the Bankruptcy Court: that the lease agreement provides it with a property interest in the building, and the improvements made therein, because Sections 8.1 and 8.2 of the lease agreement establish a formula for allocating and distributing insurance proceeds

Civil No. 15-02009 (ADC)                                                    Page 7

between appellant and appellee if the building is destroyed or substantially damaged. **ECF No. 4** at 8. Appellant believes these sections constitute *prima facie* evidence that appellee recognized appellant's property interest in the building and its improvements, and the Bankruptcy Court misinterpreted the lease agreement. *Id*. at 16.

Third, appellant argues that the Bankruptcy Court erred by concluding that Art. 297 was inapplicable to appellant's claim and that it is well-settled law that Art. 297 applies in all cases where a good-faith builder constructs with prior consent of the landowner, irrespective of whether a lessor-lessee relationship existed between the builder and the owner. **ECF No. 4** at 23. Specifically, appellant argues that the Bankruptcy Court erroneously premised its interpretation of Art. 297 on a concurring opinion in *Castrodad v. The Shell Co.* (140 D.P.R. 736 (1986)(certified translation at **ECF No. 13-1**), a Puerto Rico Supreme Court judgment that is not binding precedent. **ECF No. 4** at 15. In addition, appellant argues that the Bankruptcy Court misconstrued the Puerto Rico Supreme Court's holding in *Marchand v. Montes*, 78 P.R.R. 123 (1955), to support its interpretation of Art. 297. **ECF No. 4** at 23.

Finally, appellant argues that the Bankruptcy Court abused its discretion by imposing sanctions because it is entitled to relief under existing law. **ECF No. 4-1** at 23-24.

On August 26, 2015, appellee filed its brief in response to the appeal. **ECF No. 7**. In sum, appellee argues that the disputed property was never appellant's property because appellant agreed to the terms of the lease agreement, which unequivocally establish that said items would immediately attach to the leased property upon their construction and become property of the appellee. *Id*. at 10-11. Furthermore, appellee states that Art. 297 is

Civil No. 15-02009 (ADC)                                                    Page 8

inapplicable when there is a lessee-lessor contractual relationship between the builder and the owner of the property (*Id*. at 11). However, Art. 297 is irrelevant to appellant's claim because it would only supplement the clear and unambiguous terms of the lease agreement, which deprive appellant of any potential property right. *Id*. at 11. Appellee also asks the Court to reject appellant's arguments regarding Sections 8.1 and 8.2 of the lease agreement because it did not raise them before the Bankruptcy Court. *Id*. at 12. Finally, appellee argues that the Bankruptcy Court acted within its discretion when it imposed sanctions because the complaint only served dilatory purposes and violated Fed. R. Bankr. P. 9011(b)(1) and (2).

On September 22, 2015, appellant filed a brief in response to appellee's brief (**ECF No. 17**) in which it reaffirms that it is a well-established legal principle that Art. 297 applies regardless of the nature of the relationship between the builder and the landowner (*Id*. at 2-3). As to appellee's statement that the Court should disregard appellant's argument regarding Sections 8.1 and 8.2 of the lease agreement, appellant argues that it did not advance this argument because its position had always been that Art. 297 governs the controversy. *Id*. at 10. Nonetheless, appellant prays that the Court consider the full terms of the lease agreement, which entitle it to compensation for the disputed property. *Id*. at 10.

**II.    Standard of Review**

On an appeal from the bankruptcy court, the district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree, or remand with instructions for further proceedings. Fed. R. Bankr. P. 8013. District courts review a bankruptcy court's findings of fact under the clearly erroneous standard. *See Brandt v. Repco Printers* (In re

Civil No. 15-02009 (ADC)                                                    Page 9

Healthco Int'l, Inc.), 132 F.3d 104, 107 (1st Cir. 1997); *TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir. 1995); *Capó-Román v. La Electrónica, Inc. (In re La Electrónica, Inc.)*, 223 B.R. 393, 395 (Bankr. P.R. 1998). A finding is clearly erroneous when, upon reviewing the entire record, the court is left with the definite and firm conviction that a mistake has been committed, even if some of the evidence supports the finding. *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985); *In re CK Liquidation Corp.*, 321 B.R. 355, 361 (B.A.P. 1st Cir. 2005); *Cabral v. Shamban (In re Cabral)*, 285 B.R. 563, 571 (B.A.P. 1st Cir. 2002). If the trial court's account of the evidence is plausible in light of the record reviewed in its entirety, a reviewing court may not reverse even if convinced that it would have weighed the evidence differently as a trier of fact. *Anderson*, 470 U.S. at 574; *In re CK Liquidation Corp*, 321 B.R. at 361.

At the same time, a bankruptcy court's conclusions of law warrant a de novo review. *See Brandt* 132 F.3d at 107; *TI Fed. Credit Union* 72 F.3d at 928; *Capó-Román* 223 B.R. at 395. Nonetheless, acting as an appellate court, the district court may affirm an order of the bankruptcy court on alternative grounds supported by the record. *See In re Ponce Marine Farm, Inc.*, 259 B.R. 484, 494 (Bankr. D.P.R. 2001).

Furthermore, a bankruptcy court's decision to impose Rule 9011 sanctions and fine a party is reviewed for manifest abuse of discretion. *See* Fed. R. Bankr.P. 9011(b); *In re CK Liquidation Corp.*, 321 B.R. at 361; *1095 Commonwealth Corp. v. Citizens Bank of Mass. (In re 1095 Commonwealth Corp.)*, 236 B.R. 530, 539 (D.Mass.1999). Abuse of discretion occurs when the court ignores a material factor deserving significant weight, relies upon an improper factor,

Civil No. 15-02009 (ADC)                                                                                     Page 10

---

or makes a serious mistake in weighing proper factors. *In re CK Liquidation Corp.,* 321 B.R. at

361; *Colón v. Rivera (In re Colón),* 265 B.R. 639 (B.A.P. 1st Cir. 2001).

Finally, it is black-letter law that arguments not presented to the trial court are, with

rare exceptions, forfeited on appeal. *In re Redondo Const. Corp.*, 678 F.3d 115, 121 (1st Cir.

2012*).

### III.    Discussion

#### A.    Whether the lease agreement provides appellant a property right or a right to compensation.

Section 541(a)(1) of the Bankruptcy Code provides that property of a bankruptcy estate

includes "all legal or equitable interests of the debtor in property as of the commencement of

the case." 11 U.S.C. § 541(a); *In re The Ground Round, Inc.*, 335 B.R. 253, 259 (B.A.P. 1st Cir.

2005). Pursuant to section 542(a) of the Bankruptcy Code, a debtor or third party must

turnover to the trustee all property that belongs to the bankruptcy estate. 11 U.S.C. § 542(a)

*In re García*, 507 B.R. 32, 43 (B.A.P. 1st Cir. 2014). If an entity improperly possesses property

of the estate subject to turnover under 11 U.S.C. § 542(a), then the bankruptcy court will

disallow any claim it has over the bankruptcy estate. 11 U.S.C. § 502(d).

Here, the Bankruptcy Court found that the parties agreed in the lease agreement that

the improvements constructed or installed in the leased premises – which the Bankruptcy

Court interpreted to include the building, the kitchen exhaust system and the power generator

– automatically attached to the leased property and became property of appellee. **ECF No.
1-2** at 7. Consequently, the Bankruptcy Court determined that the terms of the lease

agreement did not grant appellant a right to remove these improvements or a property

Civil No. 15-02009 (ADC)                                                                    Page 11

interest in the building or the improvements made therein. Thus, the Bankruptcy Court held

that appellee did not improperly retain property of the estate in violation of 11 U.S.C. § 502(d)

and there were no grounds on which to disallow the collection of the PPPR. **ECF No. 1-2** at

7.

In the instant appeal, appellant argues that the Bankruptcy Court misinterpreted the

terms of the lease agreement, and that Section 12.8 of the lease agreement entitles it to remove

all movable trade fixtures and unattached items. **ECF No. 4** at 18. Accordingly, appellant

claims that the kitchen exhaust system and power generator are trade fixtures it can easily

remove without damaging the property. *Id*. Furthermore, appellant argues that appellee

tacitly recognized that appellant possesses a property interest in the building, because Section

8.1 and 8.2 of the lease agreement establish a formula for the distribution of proceeds between

appellant and appellee if the building is damaged or suffers a taking. *Id.* at 16.

Here, appellant forfeited its argument that Sections 8.1 and 8.2 of the lease agreement

recognized its property interest in the building and its improvements by establishing a

formula for the allocation and distribution of insurance proceeds between appellant and

appellee (**ECF No. 4** at 8) because it did not present the argument before the Bankruptcy

Court. *See In re Redondo Const. Corp.*, 678 F.3d at 121; *Dávila v. Corporación de P.R. para la

Difusión Pública*, 498 F.3d 9, 14 n. 2 (1st Cir.2007); *United Elec., Radio & Mach. Workers of Am. v.

163 Pleasant St. Corp.*, 960 F.2d 1080, 1096 (1st Cir.1992).

We review the Bankruptcy Court's interpretation of the lease agreement de novo. *See

Brandt v. Repco Printers,* 132 F.3d. Article 1233 of the Civil Code of Puerto Rico , P.R. Stat.

Civil No. 15-02009 (ADC)                                                    Page 12

Ann. tit. 31, § 3471 (1991), establishes the substantive law that governs the interpretation of

contracts. *Borschow Hosp. & Medical v. Castillo*, 96 F.3d 10, 15 (1st Cir.1996); *Hopgood v. Merrill

Lynch, Pierce, Fenner & Smith*, 839 F.Supp. 98, 104 (D.P.R.1993); *Marina Industrial., Inc. v. Brown

Boveri Corp.*, 114 P.R. Dec. 64, 72 (1983). *See* P.R. Stat. Ann. tit. 31 § 3471. The First Circuit

Court of Appeals has consistently held that Article 1233 is "strict in its mandate that courts

should enforce the literal sense of a written contract, unless the words are somehow contrary

to the intent of the parties." *Borschow Hosp. & Med. Supplies, Inc.*, 96 F.3d. (citations omitted).

Thus, Article 1233 "obliges us to abide by the literal meaning of the terms of the contract

when, as in the present case, they leave no doubt as to the intention of the contracting parties."

*Id.* at 16 (citations omitted). "Under Puerto Rican law, an agreement is 'clear' when it can 'be

understood in one sense alone, without leaving any room for doubt, controversies or

difference of interpretation . . . .'" *Id.* (citing *Executive Leasing Corp. v. Banco Popular de Puerto

Rico*, 48 F.3d 66, 69 (1st Cir. 1995)).

> Here, Section 12.5 of the lease agreement explicitly states that:
>
> **All Improvements, such as the Building** and all electrical, plumbing and other
> fixtures and heating and air-conditioning equipment, and all other construction
> and installation to be done by Tenant as set forth in Exhibit B hereto, as well as
> all other personal property furnished or paid for by Landlord (whether as
> initially installed or as replacements thereof), **shall when installed
> automatically attach to the freehold and/or become and remain the property
> of Landlord.**

**ECF No. 4-2** at 81 (emphasis added).

Civil No. 15-02009 (ADC)                                                      Page 13

Thus, Section 12. 5 of the lease agreement clearly establishes that the building attached to the property and became property of the landlord, and appellant has no property interest over the building, or a right to compensation.

Regarding the kitchen exhaust system, it is listed in Exhibit B of the lease agreement as part of the work tenant was obligated to perform on the leased property.  **ECF No. 4-2** at 92. Because Section 12.5 states that all the construction and installations required by Exhibit B would automatically attach to the property and become property of the landlord, appellant also has no property interest in the kitchen exhaust system, nor a right to compensation.

However, regarding the power generator, the lease agreement is not as explicit. Section 12.8 of the lease agreement states the following:

> At the expiration or sooner termination of this Lease, **Tenant shall remove any and all moveable trade fixtures, equipment and other unattached items** which Tenant, at its expense, may have installed, stored or left in the Leased Premises or elsewhere in the Shopping Center, including, but not limited to, counters, shelving, showcases, chairs and **unattached movable machinery** purchased or provided by Tenant and **which are susceptible of being moved without damage to the Improvements**.  Tenant shall not remove the Building or other Improvements, **nor any plumbing or electrical fixtures or equipment**, heating or air-conditioning equipment, floor coverings (including, but not limited to, wall- to-wall carpeting), walls, ceilings, lights, bathroom fixtures, wall coverings, storefronts, doors or storage room partitions, all of which shall be deemed to constitute a part of the freehold and/or leasehold interest of Landlord, as set forth above, nor shall Tenant remove any other items of personal property that were furnished or paid for by Landlord (whether as initially installed or as replacements thereof).

**ECF No. 4-2** at 214-215 (emphasis added).

Thus, Section 12.8 of the lease agreement establishes that appellant could remove certain items from the property once the lease agreement was terminated, including "any and

Civil No. 15-02009 (ADC)                                                                    Page 14

all moveable trade fixtures, equipment and other unattached items . . . which are susceptible

of being moved without damage to the Improvements." **ECF No. 4-2** at 214. However,

Section 12.8 also prohibits appellant from removing certain items, deemed "Improvements":

any plumbing or electrical fixtures or equipment, heating or air-conditioning equipment . . .

all of which shall be deemed to constitute a part of the freehold and/or leasehold interest of

Landlord, as set forth above." **ECF No. 4-2** at 83.

Here, appellant claims that the power generator is physically separated from the

building and bolted to the pavement with removable screws. **ECF No. 4** at 18. The

Bankruptcy Court was quick to conclude that the power generator could not reasonably be

removed without damaging the property, yet it did not substantiate this finding or hold a

hearing on the subject. *See* **ECF No. 1-2** at 7. This is a clearly erroneous finding, since it is not

substantiated by the record, and it seems likely that the power generator could be removed

without damaging the leased premises and its improvements. *See  Anderson v. Bessemer City*,

470 U.S. 564, 573 (1985); *In re CK Liquidation Corp.*, 321 B.R. 355, 361 (B.A.P. 1st Cir. 2005).

The Bankruptcy Court reasoned that [i]t was agreed to, in the Lease Agreement, that

the improvements, including the building and, more specifically, all electrical fixtures and

equipment installed therein, automatically attached to the freehold became part of the leased

premises, and, in turn, property of [appellee]." **ECF No. 1-2** at 7. The Bankruptcy Court

concluded that this listing included the power generator. *Id*. We review de novo this

interpretation of the lease agreement.

The power generator is not listed in Exhibit B as part of the work appellant was

required to perform as tenant. This exhibit lists all the improvements necessary for appellant

Civil No. 15-02009 (ADC)        Page 15

to use the leased premises for its intended purpose: operating a Mexican restaurant. **ECF No 4-2** at 172. These included improvements such as the kitchen exhaust system, a sprinkler system, and insurance, among others. *Id.* Furthermore, Section 8(e) of Exhibit B establishes that:

> Notwithstanding the foregoing, Tenant acknowledges that electric power may not be available from Landlord upon or after Landlord's Tender of Possession. Accordingly, Tenant may need to arrange for its **own temporary power or use a generator** for Tenant's electric power needs during the period when Tenant's Work is being effected prior to the time when permanent electric power is made available to the Leased Premises from the electric utility company.

**ECF No. 4-2** at 231 (emphasis added).

Therefore, the clear terms of the lease agreement establish that the power generator was not one of the required improvements that would immediately attach to the leased premises upon its installation. Instead, appellant had a right to install one, at its discretion. Although the Bankruptcy Court concluded that the power generator was property of appellee because it was an electrical fixture or equipment, **ECF No. 4-2** at 7, the clear terms of the lease agreement do not support this interpretation. The lease agreement lists the following as examples of the types of items that appellant cannot remove upon termination of the lease: "walls, ceilings, lights, bathroom fixtures . . . ." **ECF No 4-2** at 80. Meanwhile, it lists the following as items that can be removed if they do not damage the property: "counters, shelving . . . and unattached movable machinery purchased or provided by the Tenant and which are susceptible of being moved without damage to the Improvements." *Id.* A power

Civil No. 15-02009  (ADC)                                                                    Page 16

generator is neither necessary for maintaining the leased premises electrical system,[3] nor is it an electrical fixture.[4]

In sum, the Bankruptcy Court erred in concluding that the power generator was property of appellee.  If appellant can demonstrate that the power generator can be removed without damaging the property or its improvements, it has a right to do so, pursuant to the terms of the lease agreement that govern the removal of appellant's property upon termination of the lease agreement.  *See* Section 12.8 of the Lease Agreement, *Id.* at 80-81.

**B.      Article 297.**

Alternatively, appellant argues that Art. 297 entitles it to compensation for the costs incurred in installing and constructing the disputed property because it constructed and installed them with the appellee's consent.  **ECF No. 4-1** at 23.  Appellant argues that the Bankruptcy Court misconstrued the jurisprudence regarding Art. 297 because it is well-settled law that Art. 297 applies in all cases where a good-faith builder constructs with prior consent of the landowner, irrespective of whether a lessor-lessee relationship existed between the builder and the owner.  **ECF No. 4** at 23.  Appellant argues that the Bankruptcy Court erroneously based its conclusion that Art. 297 is inapplicable when there is a lessor-lessee

---

[3] The Oxford English Dictionary defines 'equipment' as "[t]he necessary items for a particular purpose.

Although certainly beneficial, a power generator is no way 'necessary' to maintain an electrical system that is, as required by the terms of the lease agreement, connected to the power grid. *Equipment*, Oxford English Dictionary, http://oxforddictionaries.com/us/definition/american_english/equipment. *See* Exhibit B of the Lease Agreement, **ECF No. 4-2** at 226.

[4] Fixture: "A piece of equipment or furniture that is fixed in position in a building or vehicle: a light fixture. Articles attached to a house or land and considered legally part of it so that they normally remain in place when an owner moves." *Fixture*, Oxford English Dictionary, http://oxforddictionaries.com/us/definition/american_english/fixture.

Civil No. 15-02009 (ADC)                                                                Page 17

relationship between the builder and the owner, on a concurring opinion issued in *Castrodad v. The Shell Co.* (140 D.P.R.) (certified translation at **ECF No. 13-1**) – a Puerto Rico Supreme Court judgment that is not binding – and *Marchand v. Montes* (78 P.R.R.) – which is distinguishable from the case at bar. **ECF No. 4** at 15. Therefore, appellant believes that he is entitled to compensation for the costs of constructing the building pursuant to Art. 297.

Article 297 of the Civil Code of Puerto Rico codifies the principle of accession: that the owner of a property has the right to everything the property produces or is incorporated to it. P.R. Stat. Ann. tit. 31 § 1161. However, Art. 297 establishes the rights and duties of the landowner that appropriates a building by accession:

> The owner of the land which has been built upon in good faith shall have the right to appropriate as his own the work, by previously paying to the owner of the work the cost of the materials and labor, or the cost of reproducing the work at the time the owner of the land exercises his right, deducting depreciation, whichever is greater, or to compel the person who constructed to pay the value of the land.

*Id.* at § 1164.

Therefore, Art. 297 establishes that the owner of the land that was built upon in good faith has the right to claim the building by accession, but must compensate the builder for either the cost of materials and labor, or the value of the building at the moment he claims it. *See generally Toro v. Mojica*, 79 P.R.R. 593 (1956); *Berrocal v. Tribunal de Distrito*, 76 P.R.R. 35 (1954).

In the instant appeal, the Bankruptcy Court concluded that when the builder is a lessee of the landowner, Art. 297 does not apply and Articles 1463 and 416 apply instead (P.R. Stat. Ann. tit. 31 § 4070 and § 1527). **ECF No. 1-2** at 7. Art. 1463 states that a lessee will have the same rights as an usufructuary in regards to the useful and voluntary improvements. P.R.

Civil No. 15-02009 (ADC)                                                                                      Page 18

Stat. Ann. tit. 31 § 4070. Therefore, although the lessee will not have a right to compensation for the improvements it carries out, it has a right to remove said improvements if doing so would not damage the goods and property. P.R. Stat. Ann. tit. 31 § 1527. Consequently, the Bankruptcy Court concluded that – if the terms of the lease agreement had not stated otherwise – appellant did not have a right to compensation for his improvements, but rather had the right to remove them if it could do so without damaging the property or the improvements. **ECF No. 1-2** at 7. However, based on the nature of the improvements made, the Bankruptcy Court concluded that it was not reasonably possible to remove them without damaging the leased property. *Id.* We review this conclusion of law de novo. *See Brandt* 132 F.3d at 107; *TI Fed. Credit Union* 72 F.3d at 928; *Capó-Román* 223 B.R.

The Bankruptcy Court based its interpretation of Art. 297 on two cases: *Marchand v. Montes*, 78 P.R.R., and *Castrodad v. The Shell Co.*, 140 D.P.R. (certified translation at **ECF No. 13-1**). In doing so, the Bankruptcy Court improperly relied on Associate Justice Rebollo's concurring opinion in *Castrodad*, a judgment that does not establish binding legal precedent and therefore is an inappropriate legal authority on which to rely. *Rivera Maldonado v. ELA*, 19 P.R. Offic. Trans. 88, 93-94 (1987).

In *Marchand v. Montes*, a landowner filed a complaint against a couple who had built a small house on property they leased from him. The landowner claimed that the house was built in bad faith and without his consent, and prayed that the court order defendants to demolish the house and restore the land to its original state. Defendants argued that they built the house with the consent of the previous owner, from whom they leased the property before it was sold to plaintiff. Therefore, defendants believed they were entitled to

Civil No. 15-02009 (ADC)                                                    Page 19

compensation for the cost of the building pursuant to Art. 297 because plaintiff was claiming

the property by its right to accession.  Although in *Marchand*  the Supreme Court of Puerto

Rico concluded that Art. 297 was inapplicable to the facts of the case, it did so because the

lessees built without the consent of the landowner, not because the builder was a lessee to the

landowner.  Therefore, they were bad-faith builders that could not invoke Art. 297's right to

compensation.  *Marchand*, 78 P.R.R. at 127.

In fact, directly contrary to the Bankruptcy Court's holding, in *Toro v. Mojica* (79 P.R.R.

593 (1956)), the Puerto Rico Supreme Court affirmed that Art. 297 applies when there is a

lessor-lessee relationship between the builder and landowner:

> Naturally, the right of accession may be asserted 'when the builder in good faith
> constructs on another's land without a lease of the lot **or in case there is one**,
> when for any reason the lease has terminated.' *García v, Stella*, 69 P.R.R. 911, 912
> (1949). And in applying this doctrine, it was definitely established in *Berrocal v.
> District Court*, 76 P.R.R. 35, 38 (1954), that 'a person who builds on a **leased lot**
> *with the consent of the owner* is a builder in good faith...'

*Toro,* 79 P.R.R. at 595-96 (emphasis added).

In a footnote, the Puerto Rico Supreme Court clarified the scope of its holding in *Marchand* and

explained that Art. 297 did not apply to the facts in *Marchand* because the lessee did not build

in good faith and not simply because there was a lessor-lessee relationship:

> This doctrine was not altered in *Marchand v. Montes*, 78 P.R.R. 123 (1955).  In that
> case the buildings were not erected with the consent of the owner of the leased
> lot, or with his 'knowledge and forbearance'. *Id.* at 130.  Hence, the judgment
> declaring inapplicable to that case Art. 297 *et seq* of the Civil Code, which deal
> with the right of accession.

*Toro,* 79 P.R.R. at 596, n.1.

Civil No. 15-02009 (ADC)                                                                 Page 20

Clearly, the Puerto Rico Supreme Court has not held that Art. 297 is inapplicable, as a general rule, when there is a lessor-lessee relationship between the builder and the landowner. Indeed, there is ample case law from the Puerto Rico Supreme Court that establishes that Art. 297 can apply when a lessor-lessee relationship exists between the builder and the landowner. *See, e.g., Toro v. Mojica*, 79 P.R.R. 593 (1956); *Berrocal v. Tribunal de Distrito*, 76 P.R.R. 35 (1954). Consequently, the Bankruptcy Court erred in concluding that Art. 297 is inapplicable between lessor and lessee as a categorical rule.

Nonetheless, it is well-settled law that the articles of the Puerto Rico Civil Code concerning lease agreements are supplementary and only apply in absence of an agreement to the contrary. *Castro Anguita v. Figueroa*, 3 P.R. Offic. Trans. 1183, 1189-90 (1975). Here, the parties agreed to terms that are contrary to Art. 297 because the lease agreement stated that the building is an improvement that would immediately attach upon construction and become property of appellee. Therefore, appellee owns the building as a result of the explicit terms of the lease agreement and not because it exercised its right of accession under Article 287. P.R. Stat. Ann. Tit. 31 § 1161. Consequently, whether Art. 297 applies or not when the builder is a lessee of the landowner is immaterial for appellant's claim over the building, since the terms of the lease agreement are sufficient to conclude that appellant did not possess a property interest or right to compensation over the disputed property. In sum, Art. 297 simply does not entitle appellant to relief.

As the Bankruptcy Court recognized, Articles 1463 and 416 could grant appellant the right to remove certain improvements, as long as it can remove them without damaging the property. **ECF No. 1-2** at 7. Appellant has no right to remove the kitchen exhaust system, as

Civil No. 15-02009 (ADC)                                                    Page 21

he expressly relinquished that right in the lease agreement.  However, regarding the power

generator, appellant has a right to remove it if doing so would not damage the leased property

or its improvements. Thus, the Bankruptcy Court must determine if the power generator can

be removed without damaging the property and according to the terms for removal agreed

to in Section 12.8 of the lease agreement.

###### C.      Whether the Bankruptcy Court erred in imposing sanctions under Fed. R. Bankr. P. 9011.

Bankruptcy Rule 9011(b) requires that an attorney who presents a document or motion

to the court certify, among other things: (1) that it is not presented for an improper purpose;

(2) that its arguments are warranted by existing law or by nonfrivolous arguments to modify

the existing law; and (3) that its factual assertions (or denials thereof) are supported by

evidence." *In re CK Liquidation Corp.,* 321 B.R. at 361-62.  If the court finds that an attorney

violates these requirements, Rule 9011(c) allows the court to impose an appropriate sanction.

Fed. R. Bankr. P. 9011(c). We review a bankruptcy court's decision to impose sanctions for

manifest abuse of discretion. *In re CK Liquidation Corp.,* 321 B.R. at 361. Abuse of discretion

occurs when the court ignores a material factor deserving significant weight, relies upon an

improper factor, or makes a serious mistake in weighing proper factors. *Id*; *Colon v. Rivera (In

re Colon),* 265 B.R. 639 (1st Cir. BAP 2001).

The Bankruptcy Court sanctioned appellant's attorney because it concluded that

appellant's claim was not supported by existing law, and was filed for the improper purpose

of delaying appellee's collection of the PPPR.  **ECF No. 1-2** at 8-11.  "A legal argument is not

warranted by existing law if it is based on legal theories that are plainly foreclosed by well-

Civil No. 15-02009 (ADC)            Page 22

established legal principles . . . ." *In re CK Liquidation Corp.,* 321 B. R. at 362.  "However, a legal

argument need not ultimately prevail in order to be warranted by existing law. In particular,

courts generally do not conclude that an unsuccessful argument is not warranted by existing

law where the argument involves unsettled or highly complex law." *Id.* at 363.

Here, appellant argues that the Bankruptcy Court abused its discretion in concluding

that appellant's claim was not warranted by existing law, and interpreting the terms of the

lease agreement.  **ECF No. 4-1** at 19, 23-24.  This Court recognizes that appellant's litigation

strategy was far from ideal, and that appellant filed its discrete claim after requesting an

extension of time to oppose appellee's collection of the PPPR – an extension that the

Bankruptcy Court granted, and an objective that appellant never fulfilled.  However,  the

Bankruptcy Court erred in interpreting Article 297 and the terms of the lease agreement, and

appellant may have a right to remove some of the claimed property.  Therefore, in sanctioning

appellant the Bankruptcy Court abused its discretion, and the sanctions against appellant are

hereby REVERSED.

**IV.  Conclusion**

For the forgoing reasons, the judgment of the bankruptcy court is **AFFIRMED in part**

**and REVERSED in part**.  The case is remanded to the Bankruptcy Court for proceedings

consistent with this ruling.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 31st day of March, 2016.

                      **S/AIDA M. DELGADO-COLÓN**
                      **Chief United States District Judge**